ORDER DENYING WRIT OF HABEAS CORPUS
Opinion of the Court by
Associate Justice ROBERT N. CLINTON
joined by Chief Justice ANNA M. ATENCIO.
introduction
[1] This matter is before this Court on a series of Petitions for Extraordinary Writ (Habeas Corpus) that Petitioner, GILBERT SELINA, filed with this Court beginning on October 20, 2009. These petitions for writ of habeas corpus contest the bail set by the Hopi Tribal Court for a series of criminal charges arising from a single incident and assert that the “Defendant’s due process right to a release on his own recognizance was violated.” Petition, Petitioner supported his petition with a thorough and well researched Memorandum of Points and Authorities. On November 10, 2009, the Tribe moved to dismiss the petition also supplying a thorough and well researched Memorandum of Points and Authorities supporting its position. This Court appreciates the diligence of counsel for both sides in researching and informing the Court through their well crafted submissions. Having carefully reviewed these submissions, the Court has determined that it must deny the requested writ of habeas corpus. This Court also disapproves of some of the reasoning by the Tribal Court that led to its bail/bond decision, but finds such errors to be harmless errors.

Factual and Procedural Background

[2] As a consequence of an automobile accident involving a fatality which occurred on October 11, 2009 on State Route 264 *325 within the Hopi Reservation, Petitioner, who is a member of the Hopi Tribe, was charged with a series of crimes. At his first initial appearance he was charged with Possession of Alcohol in violation of Tribal Ordinance 21, Section 3.3.83, as well as provisions of the Arizona Revised Statutes which have been adopted by the Tribe through Tribal Ordinance 21, § 3.3.75, specifically, Involvement in a Speeding Accident in violation Ariz.Rev.Stat., § 28-701 A, Driving Under the Influence of Alcohol in violation Ariz.Rev.Stat. § 28-1381 A 1, and Driving with a License Suspended for Lack of Insurance in violation of Ariz.Rev. Stat. § 28-3473 A. That case number in the Tribal Court is 2009-TR-0291. At the initial appearance of the Petitioner in No. 2009-TR-0291 on October 13, 2009, Petitioner requested release on his own recognizance, noting that he had no record of criminal convictions in The Hopi Court, that he was a lifelong resident of the Hopi Reservation, had relatives on the Reservation, and had been employed for over a year and half with a health agency on the Reservation. At that hearing, Petitioner, who was ably represented by an advocate, relied heavily on Hopi Tribal Ordinance 21, Section 2.5.4 and the manner in which this Court interpreted that provision in Norris v. Hopi Tribe, 98-AC-0007 (Hopi Ct.App, decided 11/28/1998) The Tribe resisted release of the Petitioner on his own recognizance, noting the seriousness of the alleged crimes, the fact that there was a fatality in the car which Petitioner allegedly struck while intoxicated and that for that reason further charges were pending. The Tribe also noted that the Petitioner recently had been charged in Flagstaff, outside the Reservation, with Driving Under the Influence of Alcohol, thereby suggesting that Petitioner, within a month prior to his arrest for the pending charges, had been outside the Hopi Reservation. The Tribe suggested that bail in the amount of $5,000 was necessary to assure the appearance of the Petitioner at further proceedings.
[3] After carefully listening to both sides, the Tribal Judge set bail of $5,000 on the Accident Involving Speeding charge, $150 on the Possession of Alcohol charge, $500 on the Driving Under the Influence of Alcohol charge, and $800 for the Driving with a Suspended License charge. Thus, at the initial appearance bail/blond was set at a total of $ 6,450. In orally explaining his reasons for this decision, the Tribal Judge expressly stated that he was “departing from Norris ” since he disagreed with the decision because it inadequately took account of the safety, health, and welfare of the Hopi community. He stated that he was setting the bail as he did to protect the safety of the community, implicitly assuring that the Petitioner would not be released. In the written Order Bail/Bond Setting, the Tribal Court expressly found that Petitioner “[i]s a threat to himself or others,” that the “[o]ffense(s) charged are serious in nature and warrant detention of the defendant,” and that “[tjhere is probable cause to believe that the defendant will not return as ordered if released on his/her own recognizance.”
[4] Shortly after the initial bail hearing, additional charges including Homicide in violation Tribal Ordinance 21, Section 3.3.39 and Reckless Driving in violation Ariz.Rev.Stat. § 28-693 A, were filed the same day against the Petitioner. That case number in the Tribal Court is 2009-CR-1298. The Tribal Court made identical written findings on these additional charges and set an additional bail/bond in the aggregate amount of $20,000 on these two additional charges.[1]
*326 [5] Within a week of Petitioner’s initial appearance his advocate filed with this Court the pending petition for writ of ha-beas corpus, claiming that the actions of The Hopi Tribal Court in setting bail/bond on these charges violated “Defendant’s due process right to a release on his own recognizance was violated,” the provisions relating to release on bail/bond in Hopi Tribal Ordinance 21, and this Court’s decision in Norris. Petition for Extraordinary Relief (Habeas Corpus)., p. 1. The Tribe filed a Motion to Dismiss the Petition for Extraordinary Relief (Habeas Corpus), urging this Court to revisit, narrow, or overturn its prior lead precedent interpreting the relevant provision of Hopi Tribal Ordinance 21.

Discussion and Decision of the Court

[6] Having reviewed the thorough and well-crafted submissions by advocates for both sides of this dispute, this Court has determined that while certain legal errors were made by the Tribal Court in setting bail/bond, most are harmless legal errors and do not constitute grounds for granting the requested extraordinary relief of a writ of habeas corpus.
[7] Under Hopi law, the setting of bail/bond for those charged with traffic offenses and crimes is governed by Hopi Ordinance 21, Chapter 5. For purposes of this matter, the three important provisions of this Chapter are the following:
2.5.2 BAILABLE OFFENSES. All Indian defendants, as a matter of right, are bailable before conviction, by sufficient cash or surety bail bond, and after conviction if an appeal be pending. If bail is not met, the Indian defendant shall be committed until his case is heard.
2.5.4 BAIL SET: MAXIMUM AMOUNT. Bail shall be set by the judge upon the showing of probable cause by the prosecutor or complainant. Bail shall b fixed in such amount and in such form as, in the judgment of the Court, will insure the presence of the defendant in Court at the time of trial, having due regard for the nature and circumstances of the offense charged and the character and reputation of the defendant and the previous criminal record of the defendant. In no case shall the bail exceed four times the maximum cash penalty for each offense for which the defendant has been charged.
2.5.10 RELEASE ON RECOGNIZANCE. At arraignment, the Court, in its discretion, may release a defendant upon defendant’s own recognizance.
Since a defendant accused of criminal conduct has not been convicted and is presumed innocent until proven otherwise, Ordinance 21 protects his or her legitimate interest in liberty protected by the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(8). As this Court explained in its Norris decision, this Court interprets such due process rights in accord with the Tribe’s interpretation of fundamental fairness, as authorized by Hopi Resolution H 12-76. See Hopi Tribe v. Mahkewa, AP-002-92/AP-003-93 (Hopi Ct.App., decided 7/14/1995).
[8] In this case, Petitioner claims that these statutes, as interpreted in Norris, afford him a “due process right to a release on his own recognizance.” Petition. This argument overstates Petitioner’s rights under both Chapter 5 of Hopi Tribal Ordinance 21 and this Court’s interpretation of that Chapter in its Norris decision. Under Ordinance 21, Petitioner *327 unquestionably has a 'right to release on bail/bond as expressly provided in Section 2.5.2. Release on his own recognizance (commonly known as OR release), however, is governed by Hopi Tribal Ordinance 21, § 2.5.10, which expressly grants the Tribal Court discretion to afford such release, by providing that “the Court, in its discretion, may release a defendant upon the defendant’s own recognizance.” (Emphasis supplied). Since section 2.5.10 expressly leaves OR release to the sound discretion of the Tribal Court, that provision plainly grants no right to OR release of the type claimed by the Petitioner.
[9] Nevertheless, Petitioner argues that this Court’s interpretation of Chapter 5 of Tribal Ordinance 21 in Norris creates a due process right to OR release that was violated in this case. In Norris, another habeas corpus case in which the Tribal Court set a substantial bail/bond, this Court carefully considered the interplay between the due process requirements of the federal Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(8), Hopi Tribal Resolution H 12-76, and the bail/bond provisions of Chapter 5 of Hopi Tribal Ordinance 21. Given the exceptionally thorough treatment of these questions in Norris, this Court does not feel obligated to retread the same ground. Instead, it simply notes that it agrees with the Norris analysis and recognizes that this analysis generally has been followed in later cases. Kg. Fritz v. Hopi Tribal Court, 6 Am. Tribal Law 418 (Hopi Ct.App.2006).
[10] The more important question is precisely what Noms held. Contrary to the Petitioner’s claims, Norris did not create any “ due process right to a release on his own recognizance.” Rather, Norris, while noting that assuring the presence of the defendant for all later proceedings in a criminal case, constituted the primary objective of the bail/bond criteria set forth in section 2.5.4, recognized that this section required the Tribal Court in considering OR release or the setting of bail/bond to consider measures that “will insure the presence of the defendant in Court at the time of trial, having due regard for the nature and circumstances of the offense charged and the character and reputation of the defendant and the previous criminal record of the defendant.” Norris and the later decision of this Court in Fritz both recognize that in considering what measures to employ that will “insure the presence of the defendant at the time of trial,” the Court can apply that objective in light of three basic factors articulated in section 2.5,4:(1) the nature and circumstances of the offense charged; (2) the character and reputation of the accused; and (3) the previous criminal record of the defendant, which this Court understands to mean pri- or criminal convictions, rather than arrests. Both Norris and Fritz expressly noted that the safety of the Hopi community was not one of the expressly enumerated factors in section 2.5.4.
[11] As the Fritz case demonstrates, the decision in Norris did not create any right to OR release, as argued by the Petitioner. Rather, the critical paragraph of the Norri,s decision provided:
The Hopi notion of due process encompasses the idea that bail should not be punitive. Fundamental fairness requires the court to restrict an individual’s liberty interest before trial no greater than the extent necessary to advance the regulatory goals of the Hopi bail scheme. Because assuring the presence of the accused remains the central concern of the bail system, a trial judge should impose a bond as a condition of pre-trial only after determining that the defendant is not likely to appear at trial.
Norris at p. 6. As later cases make clear, this paragraph does not create a right to *328 OR release. Such a right would conflict with the provisions of Hopi Tribal Ordinance 21, § 2.5.10, which leave OR release to discretion of the Tribal Court. Rather, Norris appears to create a presumption in favor of OR release which the Tribal Court, in its discretion, can overcome should it determine upon the probable cause required by section 2.5.4 that that there is doubt as to whether the defendant is likely to appear at trial. Under the express provisions of Section 2.5.4, such a determination may be made based on the gravity of the offense and the circumstances surrounding it, the reputation (or lack thereof) of the accused in the community, and the defendant’s prior criminal record, including prior criminal convictions and prior failures to appear. Norris clearly suggests that in the absence of any showing or finding that doubt exists whether the defendant will appear at trial, any setting of a financial bail/bond is punitive and conflicts with Hopi notions of fundamental fairness and due process.
[12] In Fritz, this Court revisited the same issue and reaffirmed its commitment to the Norris approach to bail. In that case, this Court ordered reconsideration of bail/bond orders that lacked any finding that there is probable cause to believe that the defendant will not return for trial as ordered if released on his/her own recognizance, although the Court in that case actually denied the writ of habeas corpus requested by the petitioner.
[13] Based on the electronic transcription of the bail/bond hearing in this matter, this Court understands why the Petitioner believes that the Tribal Court violated section 2.5.4 as interpreted in Norris. During the setting of the bail/ bond the Tribal Judge made a considerable point of noting that he disagreed with Norris and thought that it did not adequately protect the health, safety, and welfare of the Hopi community. Accordingly, he indicated that he was “departing from Norris ” and cited as one of the reasons for doing so the need to protect the safety of the community. Had this approach been the sole basis offered by the Tribal Court for denying OR release, this Court might be required to find that the Tribal Court had flagrantly ignored both Hopi Ordinance 21 and its interpretation in Norris. Clearly, the Hopi Tribal Court is always bound by constitutional laws adopted by the Tribal Council and by decisions of the Hopi Court of Appeals. It cannot set its personal preferences above either or it disregards the law and becomes a despotic source of unprincipled decisions governed by nothing beyond personal whim. All tribal judges take an oath to uphold the laws and Constitution of the Hopi Tribe. To disregard or ignore governing law because you think it wrongly decided violates that oath of office. The question of the relevance of safety of the community to bail/bond questions was directly addressed by this Court in both its Norris and Fritz decisions. Fritz specifically noted:
Unlike the federal and most state bail statutes, Ordinance 21 does not instruct the tribal court to consider danger to the community as a factor in determining the appropriate method of release.
Id. at 422, quoting Norris at footnote 5 (citing to 18 U.S.C. § 3124(b) and Am. Rev.Stat. § 13-3961 by way of contrast). Both Norris and Fritz therefore expressly hold that section 2.5.4 does not authorize the Tribal Court to consider the health, welfare, and safety of the Hopi community as a reason for denying bail or for denying OR release.[2] Thus, had the Tribal Court *329 based its decision solely on protecting the safety of the Hopi community, this Court would have been required to vacate its bail/bond orders as violating section 2.5.4. Insofar as the Tribal Court denied OR release on the basis of concerns regarding the safety, health, or welfare of the Hopi community, the Tribal Court erred as a matter of lawr.[3]
[14] Despite the Tribal Court’s erroneous reliance on safety considerations in setting Petitioner’s bail/bond on the two respective filings, this Court finds that this error constituted harmless error. In addition to relying on safety concerns, the Tribal Court in its respective written Orders Bail/Bond Setting in both filings also found that “[tjhere is probable cause to believe that the defendant will not return as ordered if released on his/her own recognizance” and that the “[ojflfense(s) charged are serious in nature and warrant detention of the defendant.” Thus, unlike Norris and Fritz, the Tribal Court in this case made a finding that there was probable cause to believe that the Petitioner would not return as ordered if he was *330 granted OR release. While the Petitioner claims that the Tribe offered no evidence to support this claim, the record contradicts this assertion. The record shows that the Tribe indicated (and the Defendant did not contest) the fact that during the prior month Petitioner was outside the Reservation in Flagstaff where he was charged with Driving Under the Influence of Alcohol. Second, he was charged with Driving with a Suspended License for Lack of Insurance. This charge by its very nature suggests, if true, a willingness to defy the lawful orders of officials, which, of course, may include orders to appear for trial. Additionally, the multiple charges arising out of this fatality accident, the most serious being homicide, obviously collectively constitute very serious charges for which the accused may face serious penalties if convicted. The fact of the serious nature of the crimes charged and the attendant potential penalties increases the likely potential that the defendant will not return for later proceedings if granted OR release. Thus, this Court finds the determination of the Tribal Court that “[t]here is probable cause to believe that the defendant will not return as ordered if released on his/her own recognizance” is supported in the record. This finding distinguishes this case factually from Norris and Fritz. Second, the gravity and circumstances of the offenses arising from this fatality accident allegedly caused by driving under the influence of alcohol, including the Homicide charge, suggest the possibility the defendant will not return as ordered for later proceedings. These considerations therefore independently support the bail/bond established by the Tribal Court, thereby making the additional findings and statements of concern rendered orally by the Tribal Judge related to safety of the Hopi community to constitute harmless error. The Tribal Court could and, undoubtedly, would have arrived at the same result for the other reasons upon which it actually relied.
[15] Under section 2.5.10 OR release is within the sound discretion of the Tribal Court. Likewise, so long as the Tribal Court recognized the defendant’s right to bail under section 2.5.2 and does not exceed the outside legal limit On the bail bond of four times the actual cash penalty for each offense established by section 2.5.4, the setting of the bail/bond is within the sound discretion of the Tribal Court. This Court will only intervene through extraordinaiy writ, like the writ of habeas corpus, where it determines that there has been an abuse of discretion, such as the application of an incorrect legal standards, as in Norris and Fritz, or where the Tribal Court simply ignored the legal requirements of section 2.5.4. Here, the bail/bond established for Petitioner did not constitute an abuse of discretion. While the Tribal Court did take into consideration as part of denying OR release and in setting the amount of the bail/bond the legally unauthorized factor of safety of the Hopi community, that error constitutes harmless error since the orders setting bail/bond are independently supported based on other findings made by the Tribal Court that are supported in the record. Thus, this Court finds no abuse of discretion in this case.

Conclusion

[16] For the reasons stated above, this Court concludes that while the Tribal Court placed legally unauthorized reliance on the safety of the Hopi community in setting the bail/bond of the Petitioner on the respective charges which he faced, this error constituted harmless error since the bail/bonds set for the Petitioner are independently supported based on other findings made by the Tribal Court that are supported in the record. Thus, the Tribal *331 Court did not abuse its discretion when setting the bail/bonds in No. 2009-TR-0291 and No. 2009-CR-1298. For this reason the Petition for Extraordinary Writ (Habeas Corpus) filed in this matter must be and hereby is denied and the matter dismissed.[4]
IT IS SO ORDERED.

. From the record before it, this Court cannot determine with a second additional bail hear *326 ing was conducted on October 13, 2009 prior to the setting of the $20,000 bail/bond on the additionally filed charges.

. This Court does not understand its holdings in Norris and Fritz to preclude considering the health, safety, and welfare of the community in any issue relating to bail/bond or OR *329 release. Rather, Norris and Fritz merely preclude the Tribal Court from treating the safety of the Hopi community as an independent ground for denying OR release or setting bail/ bond. Should the Tribal Court decide that OR release is appropriate for a defendant, it might consider imposing conditions on the OR release of a type which would protect the health, safety, or welfare of the community. For example, in this case, had the Tribal Court hypothetically been willing to grant the Defendant OR release, this Court would see nothing improper under Chapter 5 of Ordinance 21 in conditioning such OR release on the Defendant refraining from drinking liquor or ingesting other intoxicants during the period of his OR release or refraining from driving during the same period. Such safety-related conditions increase the likelihood of OR release and therefore promote the policies of fairness upon which Norris and Fritz are based. What Norris and Fritz held is that Hopi law and, in particular, section 2.5.4, does not consider the safety, health, or welfare of the community as an independent ground upon which bail/bond or OR release decisions can be based.

. In relying on the holdings of Norris and Fritz that the health, safety, and welfare of the Hopi community do not constitute appropriate independent legal grounds on which to deny OR release or set high bail/bonds, this Court does not mean to suggest that the safety concerns of the Tribal Court should be unimportant as a matter of tribal policy. It is the Tribal Council, not the tribal courts, that primarily establish such policies. Thus, this Court, based on its decisions in Norris and Fritz, has only held that the language of Ordinance 21, adopted by the Tribal Council, does not permit the Tribal Court to rely on such safety concerns in deciding whether to grant OR release or in setting the level of a bail/ bond. Setting high bail/bond for safety reasons constitutes a form of preventive detention. While some, including the Tribal Judge in this case, may favor the adoption of such a preventive detention system, this Court only notes that the Tribal Council to date has not adopted one. Thus, the safety concerns voiced by the Tribal Judge should properly be addressed to the Tribal Council to encourage amendment of section 2.5.4 to permit community health, safety and welfare to be employed as a legitimate criteria for setting bail/ bond under section 2.5.4 or deciding on OR release under section 2.5.10. Suffice it to say, until the Tribal Council has done so, the Tribal Court is not at liberty to substitute its own judgment for that of the Tribal Council and adopt its own preventive detention system without legal authorization. In filings made on behalf of the Tribal Court, the tribal prosecutor also urged this Court to revisit and perhaps overturn Norris for many of the same reasons that were advanced by the Tribal Court. Given the language of section 2.5.4, this Court cannot on its own adopt a preventive detention system for bail/bond any more than could the Tribal Court. The tribal prosecutor's quite reasonable concerns about safety therefore are better addressed to the Tribal Council. It is only the Tribal Council that can change the mandates of section 2.5.4 and adopt a preventive detention system as part of the bail/bond determination. This Court voices no policy views on the relative merits of having such a preventive detention system.

. Nothing said in this Order Denying Writ of Habeas Corpus should be construed as preventing the Tribal Court on subsequent motion from reconsidering and reducing the bail/ bonds established for the Petitioner in these matters.